# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

LINDY C. HAWTHORNE,             :

    Plaintiff,              :

vs.                             :       CA 07-0780-C

MICHAEL J. ASTRUE,              :
Commissioner of Social Security,
                                :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Docs. 20 & 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's

brief, and the parties' arguments at the May 15, 2008 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to moderate to severe vestibular neuronitis, multiple chemical allergies, chronic serous otitis media, degenerative disc disease of the cervical and thoracic spine, recurrent major depression, and a generalized anxiety disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> 3.  The medical evidence establishes that the claimant possesses the severe impairments of moderate to severe vestibular neuronitis, multiple chemical allergies, chronic serous otitis media, and degenerative disc disease of the cervical and thoracic spine; however, she does not possess an impairment or combination of impairments, listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 4.  The claimant's allegations of pain, dizziness, and functional limitations to the degree alleged are not supported by the evidence in the record.
>
> 5.  At all times relevant to this decision, the claimant possessed the residual functional capacity to perform unlimited

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 20 & 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

sitting, standing, and walking during an eight-hour workday, constant lifting and carrying of 50 pounds, frequent lifting and carrying of 60 pounds, and occasional lifting and carrying of 70 pounds, occasional balancing, frequent climbing, stooping, kneeling, crouching, and crawling, constant use of her arms and legs for pushing and pulling, and constant handling, fingering, feeling, hearing, and performing overhead reaching. The Administrative Law Judge further finds that the claimant's performance of work activities must exclude exposure to fumes, noxious odors, dust, mists, gases or poor ventilation, while her exposure to extreme heat, cold, wetness/humidity, vibration, proximity to moving mechanical parts, working in high exposed places, and driving automotive equipment should be limited to occasional.

6.     At the time of the claimant's amended disability onset date, she was 46 years old, which the Regulations define as a "younger person." The claimant is currently 51 years old, which the Regulations classify as a "person closely approaching advanced age."

7.     The claimant has a "high school and above" level of education.

8.     The claimant's past relevant work as a secretary and a graphic artist, as those jobs are customarily performed in the national economy, do not require the performance of work-related activities precluded by the above residual functional capacity. (20 CFR Section 404.1565). This conclusion is supported by vocational expert witness testimony.

9.     Vocational expert witness testimony also supports the conclusion that a significant number of other jobs exist in the national economy at the medium, light, and sedentary exertional levels that a person could perform who possessed the claimant's vocational characteristics and the capacities and limitations set out by Dr. Tarabein in Exhibit 36F. Examples given were sedentary cashier, surveillance system monitor, telephone

solicitor, and information clerk.

10.     The claimant was not under a "disability," as defined in the Social Security Act, as amended, at any time through the date of this decision.

(Tr. 43-44) The Appeals Council affirmed the ALJ's decision (Tr. 13-16) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the

Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a secretary and graphics artist, as well as other work existing in significant numbers in the national economy, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the claimant bears the burden of demonstrating the inability to return to her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). Social Security Ruling 82-61 recognizes three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant work. They are as follows:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job,

e.g., "delivery job," "packaging job," etc.[2]

2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.

3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.[3]

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

In this case, the ALJ has relied upon test three above to determine that the claimant can perform her past relevant work as a secretary and graphics artist. (Tr. 44 ("The claimant's past relevant work as a secretary and a graphic

---

[2] As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

[3] The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

artist, as those jobs are customarily performed in the national economy, do not require the performance of work-related activities precluded by the above residual functional capacity. . . . This conclusion is supported by vocational expert testimony."))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform her past relevant work. Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of . . . her PRW to determine whether the individual can still do that work." *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."

. . .

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62. In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional

capacity would permit a return to the past job or occupation. *Id.*

In this case, the plaintiff contends that the ALJ committed the following errors: (1) he erred in rejecting the opinions of Dr. Michael Lyons and Dr. Mark Gacek, her treating physicians, in favor of the opinion of one-time consultative examiner Dr. R. M. Tarabein; (2) he erred in failing to find her presumptively disabled under Listing 2.07; and (3) he erred in finding that she suffers from no severe mental impairment. Because the Court finds that the ALJ erred in assigning determinative weight to the findings and opinions of one-time consultative physician Dr. Tarabein, the other issues are not discussed herein. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

Plaintiff contends that the ALJ erred in rejecting the opinions of her treating otolaryngologists,[4] Drs. Lyons and Gacek, in favor of the opinion of one-time consultative examiner, Dr. Tarabein, a neurologist.[5]

In the Eleventh Circuit "the testimony of a treating physician must be

---

[4] An otolaryngologist is a physician who specializes in the medical and surgical treatment of the head and neck, including the ears, nose and throat. *See* THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY, at 520 (1987).

[5] A neurologist is "an expert in neurology or in the treatment of disorders of the nervous system." SLOANE-DORLAND DICTIONARY, *supra,* at 495.

given substantial or considerable weight unless 'good cause' is shown to the

contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

> The ALJ must clearly articulate the reasons for giving less weight to the opinion of the treating physician, and the failure to do so is reversible error. We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.

*Id.* (internal citations omitted). The ALJ performed the following analysis of

the opinion evidence in this case:

> The Administrative Law Judge notes that the evidentiary record contains two statements from the claimant's primary treating physician, Dr. Lyons, concluding that the claimant is "completely disabled," as well as two sets of PCE and pain forms from Dr. Lyons, indicating that the claimant does not even possess the physical functional capacity to perform work activities at the sedentary exertional level. The record also contains a letter dated March 26, 2004 in which another of the claimant's treating physicians, Dr. Gacek, stated that the claimant was "completely disabled." The Administrative Law Judge is unable to assign determinative evidentiary weight to Dr. Lyons' and Dr. Gacek's opinions that the claimant is "completely disabled" because Social Security Rulings 96-2p and 96-5p indicate that treating physician opinions on issues reserved to the Commissioner of Social Security are never entitled to controlling weight or special significance. Examples of opinions that may not be given controlling weight are opinions about what an individual's residual functional capacity is and whether an individual is disabled. Since Dr. Lyons' opinions in his September 11, 2001 and May 27, 2002 letters and Dr. Gacek's opinion in his March 26, 2004 letter concern[] an issue (whether the claimant is disabled) reserved to the

Commissioner, they cannot be given significant evidentiary weight.

The Administrative Law Judge has also reviewed and considered Dr. Lyons' opinions regarding the claimant's functional capacities and limitations as set out in the two PCE forms, as well as his opinions in the two pain forms. However, the Administrative Law Judge finds that those opinions likewise cannot be afforded determinative evidentiary weight for several reasons. First, Dr. Lyons' opinions regarding the severity of the claimant's limitations are unsupported by information contained in his treatment records, unsupported by Dr. Gacek's examination findings and clinical studies of the claimant, and they are not substantiated by MRI, CT, ENG, and audiometric test results. Second, there is no credible link between the exertional limits in the PCE forms and the claimant's vestibular neuronitis with vertigo and multiple chemical allergies, the conditions for which Dr. Lyons treated the claimant and which, by their very nature, pose nonexertional limitations and not the exertional restrictions imposed by Dr. Lyons on the claimant's abilities to sit, stand, walk, lift, and carry. Next, a comparison of Dr. Lyons' opinions in the May, 2002 PCE form and those in the June, 2004 PCE form reveals that his opinions regarding the claimant's physical capacities and limitations in certain areas differ significantly, although there is no documentary evidence of a worsening of the claimant's condition or the progression of some other medical condition that would justify the vast differences. For example, in May, 2002, Dr. Lyons stated that the claimant's abilities to use her hands for repetitive action such as simple grasping, fine manipulation, and pushing and pulling, as well as her ability to use her feet for repetitive movements, were not restricted. However, in June, 2004, he stated that the claimant was unable to use her hands for repetitive action such as pushing and pulling and fine manipulation and unable to use her feet for repetitive movements. Yet, in other respects, Dr. Lyons actually increased the claimant's physical tolerances. For instance, in May, 2002, he stated that the claimant could only frequently lift 6 to 10

pounds and only occasionally carry 6 to 10 pounds. However, in June, 2004, he stated that the claimant could occasionally lift and carry 11 to 20 pounds. These unsubstantiated vacillations in opinions diminish Dr. Lyons' overall credibility.

Finally, as briefly noted above, Dr. Lyons' opinions in the PCE forms and the pain forms are not supported by objective medical evidence and are merely conclusory. In May, 2001, Dr. Lyons stated that additional testing, including an MRI scan of the claimant's brain, was necessary to ascertain the extent of her vertigo. The MRI scan was performed on May 23, 2001 and found no abnormalities, ruling out a central nervous system disorder as the cause of her vertigo. Reverting back to the original diagnosis of vestibular neuronitis, Dr. Lyons referred the claimant to Dr. Gacek who performed ENG and audiometric testing of the claimant in June, 2001 (Dr. Lyons had previously noted that prior audiometric studies reflected only "mild low frequency hearing loss"). The results of the ENG and audiometric testing performed by Dr. Gacek in 2001 seemed to reflect that the claimant's vertigo, nystagmus, and hearing loss were only mild. In his September 11, 2001 letter, Dr. Lyons essentially stated that the claimant's symptoms (including vertigo) had been confirmed by Dr. Gacek's testing, but Dr. Gacek's testing was negative for benign paroxysmal positional vertigo. The claimant[] was also evaluated for chronic vertigo by a neurologist in 2001 but all of the testing Dr. Fleet performed was also within normal limits. ENG testing obtained by Dr. Gacek in April, 2004 demonstrated down beating nystagmus but was inconclusive for peripheral vestibular neuropathy. A CT scan of the claimant's temporal bones performed at The Johns Hopkins Hospital in November, 2004 showed no abnormalities. Contrary to Dr. Lyons' opinions, what the documentary objective medical evidence of record reflects is that the claimant's vertigo is either not as severe as she has alleged or is controlled with medication, or perhaps a little of both, and that, with the exception of her recurrent ear and sinus infections, it has been impossible to quantify the severity, frequency, and duration of the claimant's subjective allegations

of physical symptomatology. Dr. Lyons['] opinions that the claimant's pain is essentially disabling is also somewhat disingenuous considering the fact that the claimant takes no prescription pain medications and she has not been referred to a pain management specialist. As for Dr. Lyons' opinion in his October 21, 2002 letter that the claimant is unable to work because she cannot be exposed to chemical inhalants and no work place is void of chemical inhalants, it would seem as if Dr. Lyons would have us believe that the claimant lives within a protective bubble but nothing could be further from the truth. She is independent in her daily activities and is able to take simple precautions that allow her to go grocery shopping and run common, every day errands such as going to the bank or the post office. For all of the above reasons, the Administrative Law Judge cannot assign determinative evidentiary weight to Dr. Lyons' opinions in the May 2002 and June, 2004 PCE and pain forms.

The Administrative Law Judge further finds that no significant evidentiary weight can be assigned to Dr. Fleet's opinions as set out in the Medical Source Opinion form that he completed in June, 2004. Dr. Fleet's opinions are not supported by any objective findings, a fact that he readily admitted in his March 29, 2004 letter. It appears that most of the limitations in the form are based on the claimant's subjective complaint of "extreme dizzy spells" but there is no justification or corroboration for the lifting and carrying limitation of only 5 pounds occasionally.

Determinative evidentiary weight has been assigned to the findings and opinions of the examining neurologist, Dr. Tarabein, as set out in Exhibit 36F. Dr. Tarabein's conclusions are consistent with and supported by his examination findings, which are well documented in his narrative report, as well as by the results of the claimant's 2004 ENG testing, Dr. Fleet's evaluation, and recent MRA and MRI/CT scans, all of which were reviewed by Dr. Tarabein as part of his examination of the claimant. Dr. Tarabein's conclusions regarding the claimant's physical capacities and limitations are also supported by the

>opinions of the State Agency medical consultants who found that the claimant's impairments of chronic otitis media and vertiginous syndromes and other disorders of the vestibular system did not limit her exertional capacity and that the only functional restriction posed by her impairments was that of avoidance of fumes, odors, dusts, and gases. As non-examining physicians, the State Agency medical consultants opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Social Security Act.

(Tr. 38-40 (internal citations omitted))

Even assuming the ALJ had good cause to reject all the many opinions of plaintiff's treating physicians, both of whom are experts in the treatment of ear impairments, the primary source of plaintiff's claim for disability benefits, the medical evidence of record simply does not support the ALJ's decision to assign determinative evidentiary weight to the report and RFC determination of one-time consultative examiner Dr. Tarabein. In truth, Dr. Tarabein's opinion suffers from many of the same problems which the ALJ attributed to the RFC determinations of Dr. Lyons. In particular, there is no credible link between the exertional and nonexertional limitations in the PCE form completed by Dr. Tarabien and the claimant's severe impairments as found by the ALJ, that is, moderate to severe vestibular neuronitis,[6] multiple chemical

---

[6] Vestibular neuronitis is inflammation of the vestibular nerve, the nerve running to the vestibule which is in the inner ear, and results in a paroxysmal attack of severe dizziness. *See*

allergies, chronic serous otitis media,[7] and degenerative disc disease of the cervical and thoracic spine. This is because Dr. Tarabein does not include any of the foregoing diagnoses in his report of examination and, therefore, his RFC determination is not based on the severe impairments as found by the ALJ; instead, it is simply reflective of the consultative examiner's opinion of what a person with subjective nystagmous of undetermined etiology can do. (*Compare* Tr. 553-556 *with* Tr. 557-559) This Court holds that a consultative examiner's opinion regarding physical capacities that has no linkage whatsoever with the severe impairments found by the ALJ can never constitute substantial evidence of a claimant's residual functional capacity necessary to inform a step 4 or step 5 denial of benefits.[8] Accordingly, this cause need be

---

http://www.medterms.com; *compare id. with Leger v. Barnhart*, 2006 WL 3308215, *1 (E.D. Pa. 2006) ("Vestibular dysfunction is a disturbance of the body's balance system in the inner ear.").

[7]  "'Serous otitis media' is defined as 'chronic otitis media marked by serous effusion into the middle ear.'" *Allen v. Nicholson*, 2007 WL 2827530, *1 n.1 (Vet.App. 2007) (citation omitted).

[8]  This Court does not find that Dr. Tarabein's RFC determination is supported by the "the opinions of the State Agency medical **consultants**[.]" (Tr. 40) First, there was only one medical consultant or non-examining physician (*see* Tr. 217-224), not more than one as suggested by the ALJ. More importantly, in completing the subject RFC form, the non-examiner did not consider (similar to Tarabein), all of plaintiff's severe impairments, in particular the degenerative disc disease of the cervical and thoracic spines. Accordingly, this RFC form neither supports Tarabein's RFC determination nor, standing alone, does it constitute substantial evidence that plaintiff can perform the exertional and non-exertional requirements of substantial gainful work activity. *See Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (finding

remanded to the Commissioner for further proceedings not inconsistent with this decision.

This Court would note that it finds it difficult to understand how an individual with significant degenerative changes at the C6-7 interspace with moderate to severe disc space narrowing and small anterior and posterior endplate osteophytes (*see* Tr. 529) would have the ability to constantly lift and carry 50 pounds and frequently lift and carry 60 pounds (*compare id. with* Tr. 557), particularly when that person, like claimant, even as acknowledged by Dr. Tarabein, unquestionably has problems with her equilibrium (*see* Tr. 555 ("**Although physically and neurologically I do not see any need for her assistive device, however, with her disequilibrium,[9] I could understand that it has been of some help for her**.")). While plaintiff's impairments of vestibular neuronitis, chemical allergies, and serous otitis media may very well be nonexertional impairments, the dizziness/vertigo and nystagmus (Tr. 504)[10] associated with these impairments undoubtedly affect her ability to perform

---

that the opinion of a non-examining, reviewing physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision.").

[9] Disequilibrium is defined as "[l]ack or loss of equilibrium or stability." WEBSTER'S II New Riverside University Dictionary, at 385 (1994).

[10] Nystagmus is "[a]n involuntary spasmodic motion of the eyeball." WEBSTER'S II New Riverside Dictionary, at 809.

exertional activity (*see* Tr. 471 ("Patient experiences extreme dizzy spells that affect the ability to do a lot of maneuvering in daily activities.")).

Finally, this Court finds it noteworthy that the ALJ referred plaintiff for consultative examination to a neurologist in light of clear evidence in the record of the absence of a central nervous system disorder. (*Compare* Tr. 39 ("The MRI scan was performed on May 23, 2001 and found no abnormalities, ruling out a central nervous system disorder as the cause of her vertigo.") *with* Tr. 225 ("After obtaining this test and an MRI of the brain, determination of extent of dizziness and lack thereof of a central nervous system disorder would place this in the same diagnostic category as before; that is vestibular neuronitis, moderate to severe and multiple chemical allergies."))[11] The ALJ's complete reliance upon that opinion to establish plaintiff's residual functional capacity was error, given not only the previously-discussed linkage problem but, as well, Dr. Tarabein's inability to fairly and objectively evaluate Hawthorne's condition even though he purportedly reviewed her medical history. (*See* Tr. 554 ("ENG, significant for nystagmous (evaluation by Dr. Fleet, ENG was performed by Mrs. Sonia Carr on April 2004, reports were

---

[11]   It would have been a much more efficient use of the Administration's resources to send plaintiff for a consultative examination performed by a physician schooled in ear problems, that is, another otolaryngologist like Drs. Lyons and Gacek.

reviewed). Patient further had normal MRA with CT/MRI significant for left mastoiditis.")) Tarabein's report does nothing but question the viability of every condition the ALJ found to be severe (*see, e.g.* Tr. 553 ("**[c]laimed allergies**"); Tr. 556 ("**Patient clearly has a constellation of subjective symptoms, namely her unusual allergies to pretty much everything that smells regardless of what it might be, dizziness spells with claimed nystagmous which was evident o[n] her ENG[.] . . . With this (sic) striking subjective complaints and the absence of any objective findings on both her neurological and physical examination today, I have been unable to draw any conclusion or even come up with diagnoses (sic) of her condition other than subjective nystagmous[12] of undetermined etiology, or other. . . . Given patient's condition and her significant complaints with the absence of objective findings other than her ENG, I would recommend that patient undergo both psychological and psychiatric evaluation for other underlying illnesses."**)), even though the severity of all these conditions is unquestionably established by the medical evidence. Again, therefore, the

---

[12] It is nothing less than internally inconsistent for Tarabein to "sort of" conclude that plaintiff has "subjective nystagmous" while at the same time acknowledging that the ENG revealed nystagmous. In other words, an objective test clearly established that plaintiff suffers from nystagmous yet the best Tarabein can come up with is that the nystagmous exists only in Hawthorne's mind. This finding diminishes Tarabein's credibility more, in the Court's opinion, than the purported "unsubstantiated vacillations" in Dr. Lyons' two RFC determinations.

ALJ erred to reversal in relying upon Tarabein's report and RFC determination as the lynchpin for denying plaintiff's application for benefits.[13]

## **CONCLUSION**

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239

---

[13] In his brief, defendant attempts to argue that much of the evidence relied upon by the plaintiff in this Court comes after the date last insured (June 30, 2001) and, therefore, is not relevant to her claim for benefits. There are numerous problems with this argument. First, the ALJ's decision does not rely upon such argument in his decision. More importantly, the ALJ himself relies almost exclusively upon the report of Dr. Tarabein to deny claimant benefits, a report which was created on December 6, 2004 (Tr. 553). Therefore, defendant cannot be heard to argue that this Court cannot look to, or rely upon, evidence produced in this case after the date plaintiff was last insured for benefits in determining whether the Commissioner's decision denying benefits is supported by substantial evidence.

(1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 21st day of May, 2008.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**